ORIGINAL

Approved: _____
          THOMAS S. BURNETT
          Assistant United States Attorney

Before:   THE HONORABLE SARAH NETBURN
          United States Magistrate Judge
          Southern District of New York

- - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA            :

        - v. -                      :

JOSHUA STEED,                       :

                Defendant.          :

- - - - - - - - - - - - - - - - - - X

20 MAG 10184

**SEALED COMPLAINT**

Violations of 18 U.S.C. §§ 922(g), 924(c), and 2

COUNTY OF OFFENSE: BRONX

SOUTHERN DISTRICT OF NEW YORK, ss.:

SEAN DESTEFANO, being duly sworn, deposes and says that he is a Detective with the New York City Police Department ("NYPD"), and charges as follows:

COUNT ONE
(Felon in Possession)

1.   On or about September 15, 2020, in the Southern District of New York, JOSHUA STEED, the defendant, knowing he had previously been convicted in a court of a crime punishable by imprisonment for a term exceeding one year, knowingly did possess a firearm, to wit, a 9mm Taurus pistol, which had previously shipped and transported in interstate and foreign commerce.

(Title 18, United States Code, Section 922(g)(1).)

COUNT TWO
(Firearm Use, Carrying, and Possession)

2.   On or about September 15, 2020, in the Southern District of New York, JOSHUA STEED, the defendant, during and in relation to a drug trafficking crime for which he may be prosecuted in a court of the United States, namely possession with intent to distribute cocaine base and heroin, knowingly did use and carry a firearm, and in furtherance of such crime, did possess a firearm,

and did aid and abet the same.

(Title 18, United States Code, Sections 924(c)(1)(A)(i) and 2.)

The bases for my knowledge and for the foregoing charges, are, in part, as follows:

3. I am a Detective with the NYPD, and I have been personally involved in the investigation of this matter. This affidavit is based upon my conversations with other law enforcement officers, my examination of reports, records, and surveillance videos, and my involvement in this investigation. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all of the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

4. Based on my review of a criminal history report maintained by the State of New York, I have learned that JOSHUA STEED, the defendant, has been convicted of a crime punishable by imprisonment for a term exceeding one year. Specifically, I have learned, in substance and in part, the following:

a. On or about October 17, 2019, STEED pled guilty in New York County Supreme Court to: (1) criminal possession of a weapon in the third degree, in violation of New York Penal Law Section 265.02(1), which is a Class D felony that carries a maximum term of imprisonment of seven years; and (2) criminal possession of a controlled substance in the third degree, in violation of New York Penal Law Section 220.16(1), which is Class B felony that carries a maximum term of imprisonment of 25 years.

b. For the convictions described above, on or about December 5, 2019, STEED was sentenced principally to terms of six months' imprisonment, to be followed by five years of post-release supervision, to run consecutively.

5. As detailed below, JOSHUA STEED, the defendant, was arrested on or about September 15, 2020. The defendant waived his *Miranda* rights and agreed to speak with law enforcement. Based on my review of a recording of the interview of STEED, I have learned, in substance and in part, that STEED acknowledged that he knows he has previously been convicted of a felony.

6.     As explained below, I have learned that, on or about September 15, 2020, officers from the NYPD found JOSHUA STEED, the defendant, in possession of a fanny pack containing a loaded 9mm Taurus pistol (the "Firearm") and narcotics, packaged in a manner consistent with the distribution of narcotics.

7.     Based on my review of 911 call records maintained by the NYPD, I have learned, in substance and in part, the following:

a.     On or about September 15, 2020, at approximately 12:03 a.m., an individual ("Individual-1") called 911 and reported, in substance and in part, that Individual-1 was driving near West 197th Street and Goulden Avenue in the Bronx, New York, and was being followed by a man ("Suspect-1") who had displayed a firearm.

b.     Individual-1 reported that Suspect-1 was driving a black Chevy Impala. Individual-1 described Suspect-1, in substance and in part, as Spanish with dreadlocks dyed blonde, approximately 28 years old, and wearing a grey hoodie. Individual-1 also said that a woman was in the passenger side of Suspect-1's car.

8.     Based on my conversations with an NYPD officer ("Officer-1"), I have learned, in substance and in part, the following:

a.     Beginning at approximately 12:03 a.m., Officer-1 received a radio report regarding the 911 call described above.

b.     Approximately five minutes after receiving the radio report, Officer-1 called Individual-1 because he was attempting to locate Suspect-1 and wanted additional information. During the call, Individual-1 told Officer-1, in substance and in part, that Suspect-1 was Hispanic, had dreadlocks, and was wearing a grey hoodie.

c.     Following the phone call, Officer-1 heard over the radio other NYPD officers who were with Individual-1 request that a car go to the vicinity of West 195th Street and University Avenue in the Bronx, New York, which is in the vicinity of one of the locations where Individual-1 had said she had seen Suspect-1.

d.     Officer-1 canvassed the area around West 195th Street and University Avenue. At approximately 12:25 a.m.,

Officer-1 spotted a black Chevy sedan (the "Chevy") that was double parked on a side street. Based on the appearance of the Chevy, Officer-1 believed it to be a Chevy Impala, which is a type of sedan.

        e.    Officer-1 pulled up next to the passenger side of the Chevy and observed a man outside the driver's side of the vehicle talking to the driver (the "Driver"). The windows of the Chevy were tinted, so Officer-1 shone his flashlight at the passenger-side window to get the Driver's attention. The Driver then rolled down the passenger-side window, and Officer-1 observed that the Driver was a Hispanic man with dreadlocks, wearing a grey hoodie. The dreadlocks appeared to be dark, but the Driver's hair was partially covered by the grey hoodie.

        f.    Officer-1 believed that he had located the car from the 911 report because it was what appeared to be a black Chevy Impala, with a Hispanic man with dreadlocks and a grey hoodie in the driver's seat.

        g.    Officer-1 told the Driver, in substance and in part, to pull up because he was double parked.

        h.    The Driver began to drive and Officer-1 followed in his car. As the Chevy reached the end of the block, Officer-1 put on his lights and sirens.

        i.    The Chevy did not stop. Instead, it continued to drive, with Officer-1 following behind in his car. For a time, the Chevy drove at a normal speed and made two, brief stops, during which Officer-1 saw a person open the rear passenger-side door of the Chevy and attempt to exit the vehicle before returning inside.

        j.    After several blocks, the Chevy ran a red light and significantly increased its speed. Officer-1 continued to follow the Chevy, until the Chevy crashed into a light pole near the intersection of East 188th Street and Grand Concourse Avenue.

        k.    Officer-1 pulled up to the Chevy and observed a person, later identified as JOSHUA STEED, the defendant, leave the Chevy from the rear passenger-side door and begin to run. Officer-1 chased STEED on foot for several car lengths, at which point STEED fell, regained his footing, and then began running back toward the Chevy.

4

l. STEED ran into another NYPD officer, knocking the officer over. Officer-1 and other NYPD officers who had responded to the scene then attempted to subdue STEED. In the process, Officer-1 grabbed hold of a fanny pack that STEED was wearing and felt what appeared to be a gun inside.

m. After STEED was secured, Officer-1 looked inside the fanny pack and found the Firearm, approximately 46 vials of a substance appearing to be cocaine base, commonly known as "crack cocaine," a clear Ziploc bag of substance appearing to be crack cocaine, and approximately 50 packages containing a substance appearing to be heroin. Officer-1 and other NYPD officers then placed STEED under arrest.[1]

9. Based on my review of communications from a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives, I have learned, in substance and in part, that the Firearm was not manufactured in New York State.

WHEREFORE, deponent respectfully requests that a warrant be issued for the arrest of JOSHUA STEED, the defendant, and that he be arrested, and imprisoned or bailed, as the case may be.

/s authorized electronic signature

DETECTIVE SEAN DESTEFANO
New York City Police Department

Sworn to through the transmission of this Complaint by reliable electronic or telephonic means, pursuant to Federal Rule of Criminal Procedure 4.1, this 23 day of September, 2020

THE HONORABLE SARAH NETBURN
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

---

[1] After participating in the arrest of STEED, Officer-1 discovered that the Chevy was not a Chevy Impala. Instead, it was a Chevy Cobalt, which is a different brand of Chevy sedan. Officer-1 also went to a local precinct, where he spoke with Individual-1 and a person who had been driving with Individual-1 at the time of the 911 report. During the conversation, Officer-1 learned that the Chevy he had pulled over was not, in fact, the vehicle that Individual-1 had reported to 911, because Individual-1 told him that Suspect-1 was neither STEED nor the Driver.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

UNITED STATES OF AMERICA,

-against-

Joshua Steed

Defendant(s).
-----------------------------------------------------------------X

**CONSENT TO PROCEED BY VIDEO OR TELE CONFERENCE**

20 -Mag- 10184 ( )( )

Defendant _____Joshua Steed_____ hereby voluntarily consents to participate in the following proceeding via _X_ videoconferencing or _X_ teleconferencing:

_X_ Initial Appearance Before a Judicial Officer

_X_ Arraignment (Note: If on Felony Information, Defendant Must Sign Separate Waiver of Indictment Form)

_X_ Bail/Detention Hearing

_X_ Conference Before a Judicial Officer


_/s/ Joshua Steed by Amy Gallicchio_
Defendant's Signature
(Judge may obtain verbal consent on
Record and Sign for Defendant)

_Joshua Steed_
Print Defendant's Name

_/s/ Amy Gallicchio_
Defendant's Counsel's Signature


_Amy Gallicchio_
Print Counsel's Name


This proceeding was conducted by reliable video or telephone conferencing technology.

9/24/2020
_____
Date

_____
U.S. District Judge/U.S. Magistrate Judge